**IN RE L.A.B.**

[178 N.C. App. 295 (2006)]

IN THE MATTER OF L.A.B., MINOR CHILD

No. COA05-1316

(Filed 5 July 2006)

**1. Appeal and Error; Termination of Parental Rights— preservation of issues—no argument in brief—failure to provide a safe home—findings supported**

Assignments of error concerning findings that a parent lacked the ability or willingness to establish a safe home were deemed abandoned where her brief contained no arguments challenging the findings. Furthermore, the transient state of the mother's housing at all times since the child's birth, along with her untreated hygiene issues, her failure to adequately supervise the child during visitation, and her failure to complete parenting classes all supported the trial court's determination that the mother lacked the ability or willingness to establish a safe home.

**2. Termination of Parental Rights— guardian ad litem for parent—not appointed at initial adjudication hearing**

The trial court's failure to appoint a guardian ad litem for respondent mother for an initial adjudication hearing did not undermine the legitimacy of the trial court's findings with respect to the mother's ability or willingness to establish a safe home in a later termination of parental rights order.

**3. Termination of Parental Rights— grounds—only one required—no consideration on appeal for further grounds**

The trial court need only find that one statutory ground for termination of parental rights exists in order to proceed to the dispositional phase. Arguments on appeal regarding further grounds were not reached.

**4. Termination of Parental Rights— best interest of child—polar star**

The trial court did not abuse its discretion in a termination of parental rights case by concluding that termination was in the child's best interests. While there is sympathy for the mother's mental health issues, particularly in light of a nightmarish childhood, the best interest of the child is the polar star.

Appeal by respondent from order entered 19 April 2005 by Judge James T. Hill in Durham County District Court. Heard in the Court of Appeals 19 April 2006.

*Cathy L. Moore, Assistant County Attorney, for petitioner-appellee.*

*Richard Croutharmel for respondent-appellant.*

*Wendy C. Sotolongo for guardian ad litem-appellee.*

GEER, Judge.

Respondent mother D.B. appeals from an order terminating her parental rights with respect to her child L.A.B. The bulk of respondent mother's appellate arguments are based on her contention that the trial court erred by failing to appoint a guardian *ad litem* ("GAL") to represent her at the time of the initial adjudication hearing, and instead appointing one only after the filing of the motion to terminate her parental rights. Respondent mother has not, however, properly preserved the issue for appellate review. In any event, the argument is foreclosed by *In re O.C.*, 171 N.C. App. 457, 615 S.E.2d 391, *disc. review denied*, 360 N.C. 64, 623 S.E.2d 587 (2005), and reflects a misunderstanding of the role of a GAL appointed for an adult parent.

Further, we hold that the trial court's findings of fact, which have not been materially contested on appeal, are sufficient to support the trial court's termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)(9) (2005). Because respondent mother has failed to demonstrate any abuse of discretion by the trial court in determining that it was in L.A.B.'s best interest to terminate respondent mother's parental rights, we affirm the trial court's order.

## Factual and Procedural History

Respondent mother gave birth to L.A.B. in August 2003.[1] When the child was four days old, he was taken into the custody of the Durham County Department of Social Services ("DSS"), and he has remained in foster care up to the present time. In October 2003, following a psychological assessment, respondent mother was diagnosed with post-traumatic stress disorder arising from sexual abuse that she had endured as a child, attention deficit/hyperactivity disorder, mood disorder, and personality disorder. On a Global Assessment of Functioning, respondent mother scored a rating of 43 on a scale of 1 to 100, indicating significant impairment in interpersonal, occupational, and community functioning. Based on this assessment, it was recommended that she attend individual therapy once a week, attend

---

1. The child's father, A.G., has signed relinquishment papers with respect to the child and is not a party to this appeal.

group therapy three times a week, complete a course of parenting classes, and take certain prescribed medication.

Previously, respondent mother's parental rights had been terminated with respect to an older child, K.C.B., on 30 June 1992. Reports in the record indicate that K.C.B. was born when respondent mother was 13 years old. The pregnancy resulted from sexual abuse of respondent mother by her stepfather.

L.A.B. was adjudicated dependent on 3 December 2003. The court found that respondent mother suffered from mental illness, did not maintain her own hygiene, did not maintain a clean home, and was unable to care for a newborn child. The court also found that she did not have any relatives who were able to care for the child. While custody of L.A.B. remained with DSS, respondent mother was allowed supervised visitation with him twice weekly. Because reunification of the child and his mother remained the eventual goal, the court ordered respondent mother to follow the recommendations of her psychological evaluation, to attend and complete a parenting program, and to maintain stable housing.

At a review hearing in March 2004, DSS reported that respondent mother had not complied with the December order or with her DSS case plan. Specifically, she had failed to keep appointments with the Durham Center for Mental Health Services, failed to appear at parenting classes, rejected DSS' attempts to assist her with finding housing, and was living in a homeless shelter. She had also failed to keep appointments with DSS to assist her with basic skills such as budgeting and housekeeping. Respondent mother's lack of personal hygiene and grooming also remained a problem, causing L.A.B. to become fussy during his visits with respondent mother and making it difficult for staff to sit in and monitor the visits due to the odor.

At a subsequent review hearing in August 2004, the court heard evidence that respondent mother continued to miss her recommended appointments, failed to follow through on referrals, and did not obtain or maintain stable housing. Based on this evidence, the child's permanent plan was changed from reunification to adoption. DSS filed a motion for termination of respondent mother's parental rights on 29 September 2004.

The motion alleged the following three statutory grounds for termination: (1) under N.C. Gen. Stat. § 7B-1111(a)(2), respondent mother willfully left the child in foster care for more than 12 months

IN RE L.A.B.

[178 N.C. App. 295 (2006)]

without showing that reasonable progress under the circumstances had been made in correcting those conditions which led to the removal of the juvenile; (2) under N.C. Gen. Stat. § 7B-1111(a)(6), respondent mother was incapable of providing for the proper care or supervision of the child, and there was a reasonable probability that such incapability would continue for the foreseeable future, due to substance abuse, mental retardation, mental illness, organic brain syndrome, or a similar cause or condition; and (3) under N.C. Gen. Stat. § 7B-1111(a)(9), respondent mother's parental rights had been terminated involuntarily with respect to another child, and respondent mother lacked the ability or willingness to establish a safe home. Following the filing of DSS' motion, on 22 November 2004, the trial court appointed a GAL for respondent mother.

On 19 April 2005, the Durham County District Court entered an order terminating respondent mother's parental rights on the grounds set forth in § 7B-1111(a)(2) and (a)(9). The court specifically declined to find that grounds existed under § 7B-1111(a)(6). Respondent mother filed a timely appeal.

---

A termination of parental rights proceeding involves two separate analytical phases: an adjudicatory stage and a dispositional stage. *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). A different standard of review applies to each step.

At the adjudicatory stage, "the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). If the trial court concludes that the petitioner has proven grounds for termination, this Court must determine on appeal whether "the court's findings of fact are based upon clear, cogent and convincing evidence and [whether] the findings support the conclusions of law." *In re Allred*, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996). Factual findings that are supported by the evidence are binding on appeal, even though there may be evidence to the contrary. *In re Williamson*, 91 N.C. App. 668, 674, 373 S.E.2d 317, 321 (1988). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

Under N.C. Gen. Stat. § 7B-1111(a), the trial court need only find that one statutory ground for termination exists in order to proceed

to the dispositional phase and decide if termination is in the child's best interests. *In re Shermer*, 156 N.C. App. 281, 285, 576 S.E.2d 403, 407 (2003). If the trial court concludes that the petitioner has met its burden of proving at least one ground for termination, the trial court proceeds to the dispositional phase and decides whether termination is in the best interests of the child. N.C. Gen. Stat. § 7B-1110(a) (2005); *Blackburn*, 142 N.C. App. at 610, 543 S.E.2d at 908. This Court reviews that decision under an abuse of discretion standard. *In re Nesbitt*, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).

## Adjudicatory Stage

[1] With respect to the adjudicatory stage, respondent mother challenges the trial court's determination that grounds existed to terminate her parental rights under § 7B-1111(a)(2) and (a)(9). We first address her arguments under § 7B-1111(a)(9). This subsection provides for termination of parental rights when "[t]he parental rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home." Termination under § 7B-1111(a)(9) thus necessitates findings regarding two separate elements: (1) involuntary termination of parental rights as to another child, and (2) inability or unwillingness to establish a safe home.

In this case, respondent mother concedes that she "does not question the sufficiency of the evidence establishing that a court of competent jurisdiction terminated her parental rights to a previous child." As to the second element, the trial court made the following pertinent findings of fact:

11. On December 3, 2003, March 2, 2004, April 27, 2004, August[] 16, 2004, and February 8, 2005, the mother was ordered to . . . maintain stable housing. The mother failed to comply with these orders.

12. With respect to compliance with psychological recommendations, the mother is not currently seeking treatment. The mother is aware of the recommendations for treatment, but she believes she needs no treatment for ADHD, and only possibly needs treatment for PTSD. Numerous appointments and referrals for individual therapy were set up by her case manager at the Durham Center, Cleriece Pressley, and Durham DSS. However, approximately half the time the mother missed these appoint-

ments, and on those occasions when she did attend, failed to follow-up on subsequent appointments. Sometimes the mother would be out of contact with her case manager for one to two months. The mother took medication for only one month, then failed to meet with a doctor to get a refill of the prescription. This inability to keep appointments and follow-through on recommendations negatively impacted her treatment.

. . . .

14. With respect to parenting classes, the mother did complete one parenting program at the Health Department, but was recommended for more parenting instruction, which she did not complete. In addition, the mother received referrals from Durham DSS to two other parenting programs, but she completed neither.

15. With respect to stable housing, Durham DSS provided monthly financial assistance, and provided technical assistance on two occasions, to help [respondent mother] find and maintain stable housing. Nonetheless, the mother has lived in nine different locations since the child has been in foster care, including a rooming house, a homeless shelter, a Budget Inn, and the homes of friends.

16. The mother attends visitation with the child. However, she has not progressed beyond supervised visitation because of concerns about her not paying adequate attention to the child. She rarely asks questions about the child or his development.

17. The mother has significant hygiene problems. Community-based services with a para-professional were offered by her case manager at the Durham Center to address this issue, but the mother did not take advantage of these services.

Respondent mother specifically assigned error to each of these findings of fact, but her brief contains no argument challenging any of them. We, therefore, deem these assignments of error to be abandoned. N.C.R. App. P. 28(a) ("Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned.")

We further hold that these findings of fact are sufficient to support the second element of § 7B-1111(a)(9). The transient state of respondent mother's housing at all times since L.A.B.'s birth, along

with her untreated hygiene issues, failure to adequately supervise L.A.B. during visitation, and failure to complete the classes necessary for her to learn how to effectively parent L.A.B., all support the trial court's determination that respondent mother lacks the ability or willingness to establish a safe home in which L.A.B. could spend his childhood. *See In re V.L.B.*, 168 N.C. App. 679, 683, 608 S.E.2d 787, 791 (undisputed finding of previous termination of parental rights with respect to another child, coupled with chronic and severe mental health problems on the part of both parents, supported the trial court's conclusion that grounds to terminate parental rights existed under § 7B-1111(a)(9)), *disc. review denied*, 359 N.C. 633, 614 S.E.2d 924 (2005).

**[2]** Respondent mother argues, however, that the trial court's decision to terminate her parental rights under § 7B-1111(a)(9) was tainted by the court's failure to appoint her a GAL until after the filing of the motion to terminate her parental rights. She states in her brief:

> [T]he trial court's ability to assess Respondent-Mother's ability or willingness to establish a safe home was hindered by its failure to provide Respondent-Mother with a GAL to help her navigate the legal proceedings. Had the trial court helped her, through the appointment of a GAL, to get her mental health problems under control[,] the trial court would have had better evidence to know that Respondent-Mother was aware of what constituted a safe home for the child.
>
> The facts that Respondent-Mother lived in several different places and failed to keep her social workers informed of her whereabouts may simply have been the result of her mental health infirmities. We cannot positively know since she was not appointed a GAL early on in her case and the DSS social workers assigned to her case were not necessarily looking out for her best interests.

We begin our analysis by observing that respondent mother's argument that the trial court erred by failing to appoint her a GAL earlier in the proceedings has not been properly preserved for appeal because the issue was not the subject of any of her assignments of error. *See* N.C.R. App. P. 10(a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ."). We are, therefore, precluded from reviewing this issue. *See Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610

S.E.2d 360, 361 (2005) (holding that appeal should be dismissed in part because the arguments in appellant's brief did not match the substance of the assignments of error).

Even assuming *arguendo* that the trial court committed error by its failure to appoint a GAL for respondent mother for the initial adjudication hearing, this Court has recently held that such an error does not "bear[] a legal relationship with the validity of the later order on termination." *O.C.*, 171 N.C. App. at 462, 615 S.E.2d at 394-95 (overruling parent's assignment of error, in an appeal from an order terminating parental rights, pertaining to the trial court's failure to appoint the parent a GAL at the initial adjudication hearing). Respondent mother urges this panel not to follow the holding of *O.C.* It is, however, well-established that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). We are, therefore, bound by our previous opinion in *O.C.*

We note additionally that respondent mother's argument reflects a fundamental misunderstanding of the role of a GAL with respect to an adult parent. Specifically, it appears respondent mother has confused the GAL with the more expansive "guardian of the person." Duties of the latter include making "provision for the ward's care, comfort, and maintenance," as well as for the ward's "training, education, employment, rehabilitation, or habilitation." N.C. Gen. Stat. § 35A-1241(a)(1) (2005). Guardians of the person are also charged with, among other things, arranging the ward's "place of abode." N.C. Gen. Stat. § 35A-1241(a)(2).

A court's appointment of a GAL, by contrast, "is for the purpose of protecting and ensuring, at the very least, the procedural due process rights of a parent who may be later adjudicated as 'incapable.' " *In re D.S.C.*, 168 N.C. App. 168, 171, 607 S.E.2d 43, 46 (2005). *See also In re Shepard*, 162 N.C. App. 215, 227, 591 S.E.2d 1, 9 (2004) (noting that the role of the GAL is as a "guardian of procedural due process for [the] parent, to assist in explaining and executing her rights"). In *Shepard*, this Court, although acknowledging that there "are no specifics as to the proper conduct of the GAL," *id.* at 228, 591 S.E.2d at 10, pointed to the GAL's role as a spokesperson for the parent and the GAL's duty to protect the parent's interests in the course of the legal proceedings, including working with the parent to under-

IN RE L.A.B.

[178 N.C. App. 295 (2006)]

stand the gravity of the proceedings. *Id.* at 228, 229-30, 591 S.E.2d at 9, 10. *See also In re J.A.A.*, 175 N.C. App. 66, 71, 623 S.E.2d 45, 48 (2005) ("The trial court should always keep in mind that the appointment of a guardian *ad litem* will divest the parent of their fundamental right to conduct his or her litigation according to their own judgment and inclination.").

We have found no authority, and respondent mother has cited none, suggesting that a GAL serves as a type of social worker for the parent. Thus, even if the trial court had appointed a GAL at the adjudication stage, it would not have been that GAL's duty to assist respondent mother with "get[ting] her mental health problems under control." Accordingly, we cannot conceive of how the trial court's failure to appoint a GAL for respondent mother for the initial adjudication hearing undermines the legitimacy of the trial court's findings of fact with respect to N.C. Gen. Stat. § 7B-1111(a)(9).

[3] In sum, we hold that the trial court did not err in its conclusion that grounds to terminate respondent mother's parental rights exist under § 7B-1111(a)(9). Further, because the trial court need only find that one statutory ground for termination exists in order to proceed to the dispositional phase and decide if termination is in the child's best interests, *Shermer*, 156 N.C. App. at 285, 576 S.E.2d at 407, we need not reach respondent mother's arguments regarding N.C. Gen. Stat. § 7B-1111(a)(2). *In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground of neglect found by the trial court.").

## Dispositional Stage

[4] We next turn to respondent mother's argument that the trial court abused its discretion in concluding during the dispositional stage that the termination of respondent mother's parental rights was in L.A.B.'s best interests. The trial court is not required to automatically terminate parental rights in every case in which statutory grounds exist. *Nesbitt*, 147 N.C. App. at 352, 555 S.E.2d at 662. Here, in arguing that the trial court abused its discretion, respondent mother first repeats her argument regarding the trial court's failure to appoint a GAL earlier. Respondent mother also points to the bond she formed with the child during their twice weekly visits and contends that "DSS never let Respondent-Mother care for this child outside of the hospital he was born in" and "made up its mind when this child was born that he would not be raised by his mother."

**IN RE L.A.B.**

[178 N.C. App. 295 (2006)]

While we are sympathetic to respondent mother's severe mental health issues, particularly in light of what was, by all accounts, a nightmarish childhood, we also stress that "[t]he best interest of the child[] is the polar star by which the discretion of the court is guided." *Bost v. Van Nortwick*, 117 N.C. App. 1, 8, 449 S.E.2d 911, 915 (1994) (internal quotation marks omitted), *appeal dismissed*, 340 N.C. 109, 458 S.E.2d 183.(1995). In this case, the record shows that respondent mother's psychological assessments repeatedly indicate an above average intellectual functioning coupled with mood and personality disorder issues that, in the words of one psychologist, "contribute to the likelihood of stormy interpersonal relationships which in turn lead to considerable distress." Other therapists whose opinions are included in the record have noted that respondent mother exhibits symptoms characteristic of untreated schizophrenia. The trial court's findings indicate that respondent mother has consistently refused to acknowledge that she suffers from these mental disorders and has shown poor compliance with recommendations for needed medication and therapy.

Perhaps most importantly, between the time of L.A.B.'s birth and the time her parental rights were terminated, respondent mother demonstrated no ability to establish a safe and stable home for L.A.B., despite repeated offers of funding and logistical assistance from DSS. In such circumstances, we cannot conclude that the trial court's disposition was manifestly unreasonable. *See Shipman v. Shipman*, 357 N.C. 471, 475, 586 S.E.2d 250, 254 (2003) (recognizing that parent's frequent moves and dependence on others for housing had a self-evident effect on child's welfare); *Flanders v. Gabriel*, 110 N.C. App. 438, 441, 429 S.E.2d 611, 613 (recognizing the importance of "a stable and continuous environment" to a child's best interests), *aff'd per curiam*, 335 N.C. 234, 436 S.E.2d 588 (1993). In light of these considerations, we conclude that the trial court did not abuse its discretion in finding that it was in L.A.B.'s best interests for respondent mother's parental rights to be terminated.

Affirmed.

Judges TYSON and JACKSON concur.