IN THE MATTER OF: B.D.
No. COA06-1140
North Carolina Court of Appeals
Filed February 20, 2007
This case not for publication
Jill Y. Sanchez, for Gaston County Department of Social Services petitioner-appellee.
Annick Lenoir-Peek for respondent-appellant.
Womble Carlyle Sandridge & Rice, P.L.L.C., by Murray C. Greason, III, for Guardian Ad Litem appellee.
McCULLOUGH, Judge.
Respondent-father ("respondent") appeals from an order granting guardianship of the juvenile and ceasing reunification efforts. We affirm.

FACTS
On 31 October 1995, the Gaston County Department of Social Services ("DSS") filed a petition alleging that B.D. was a neglected juvenile, and the district court placed B.D. in the non-secure custody of DSS on that date. Respondent was served with the summons on 9 November 1995 and appeared and participated in the juvenile court proceedings. B.D. was adjudicated a "neglected" juvenile on 24 April 1997. Respondent was granted custody of the juvenile pursuant to an order entered 30 June 1997, but the court did not terminate its jurisdiction.
On 9 July 1998, DSS filed another petition. This petition alleged that B.D. was a neglected and/or dependent juvenile. The petition stated that respondent-father was incarcerated and had failed to make an appropriate child care arrangement. DSS assumed custody by non-secure custody order. Subsequently, B.D. was adjudicated a dependent juvenile.
On 26 February 1999, an order was filed which ceased reunification efforts and ordered that DSS proceed with a plan for adoption. From 1999 through 2006, the court continued to hold review hearings. DSS retained custody.
On 29 March 2006, DSS filed a motion for review. DSS recommended that the trial court appoint B.D.'s foster parents as B.D.'s guardians. DSS stated that B.D. had been placed in the same foster home since 24 May 2002, and that the placement was in her best interest. A hearing on the motion was held and the court entered an order appointing B.D.'s foster parents as guardians. Respondent appeals.

ANALYSIS

I.
Respondent contends the trial court committed reversible error because it did not have subject matter jurisdiction. Specifically, respondent asserts (a) that DSS failed to issue and serve a summons; (b) that DSS failed to file an affidavit of status in compliance with N.C. Gen. Stat. § 50A-9 (1989) (repealed effective 1 October 1999), the statute in effect at the time of the filing of the petition; and (c) that DSS failed to comply with the North Carolina General Statutes because the petition alleging dependency failed to list the address of B.D. We disagree.

A.
Defendant contends that the court lacked jurisdiction because no summons was issued or served. We disagree.
At the time of the filing of the initial petition, the North Carolina General Statutes gave the district court "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be delinquent, undisciplined, abused, neglected, or dependent." N.C. Gen. Stat. § 7A-523 (1995) (repealed effective 1 July 1999). Furthermore, the General Statutes provided:
When the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until he reaches his eighteenth birthday. . . . Nothing herein shall be construed to divest the court of jurisdiction in abuse, neglect, or dependency proceedings.
N.C. Gen. Stat. § 7A-524 (1995) (repealed effective 1 July 1999). The current version of the statute similarly provides for continuing jurisdiction over juveniles. N.C. Gen. Stat. § 7B-1000(b) (2005).
In the instant case, on 31 October 1995, an initial neglect petition was filed, and the Clerk of Court issued a juvenile summons to respondent. The summons was personally served on respondent by the Sheriff on 9 November 1995. Prior to the entry of the order appealed from, no order had been entered closing the case and terminating the court's jurisdiction, and B.D. had not yet reached the age of eighteen. Thus, the court retained jurisdiction. Therefore, we disagree with respondent's contention.

B.
Respondent contends the trial court lacked jurisdiction because petitioner failed to comply with the Uniform Child Custody Jurisdiction Act ("UCCJA"). Specifically, respondent claims petitioners failed to file an affidavit of status in accordance with N.C. Gen. Stat. § 50A-9, and thus the trial court should have dismissed the petition. We disagree.
Our Supreme Court adopted a dissent from our Court where we stated "the requirements set forth by the [Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA")] do not divest a court of jurisdiction where . . . no other court has any claim to jurisdiction over the action." In Re Poole, 151 N.C. App. 472, 476, 569 S.E.2d 200, 202 (2002), rev'd per curiam, 357 N.C. 151, 579 S.E.2d 248 (2003). The UCCJEA, which became effective after the UCCJA, has as one of its goals to "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody" and to "[p]romote cooperation with the courts of other States to the end that a custody decree is rendered in that State which can best decide the case in the interest of the child[.]" N.C. Gen. Stat. § 50A-101 (Official Comment) (2005). Similarly, the UCCJA was a jurisdictional act relating to child custody proceedings. Its purpose, among other things, was to "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being[.]" N.C. Gen. Stat. § 50A-1 (1989) (repealed effective 1 October 1999).
Here, the case does not involve an interstate conflict. Any purported failure to comply with the UCCJA did not divest the court of its authority. Therefore, we disagree with respondent.

C.
Respondent contends that the court lacked jurisdiction because the petition alleging dependency failed to list the address of the juvenile. However, the petition clearly stated that the juvenile "currently reside[s]" with her maternal aunt and the aunt's address was listed in the petition. Accordingly, we conclude that the trial court had jurisdiction.

II.
Respondent contends the trial court erred by entering an order which failed to comply with N.C. Gen. Stat. § 7B-906 (2005). Respondent claims that: (a) the trial court failed to make sufficient findings in accordance with N.C. Gen. Stat. § 7B-906(c); and (b) that the trial court failed to comply with N.C. Gen. Stat. § 7B-906(g). We address respondent's arguments in turn.

A.
Respondent argues that the trial court failed to comply with the requirements of N.C. Gen. Stat. § 7B-906(c). We disagree.
N.C. Gen. Stat. § 7B-906(c) provides that:
At every review hearing, the court shall consider information from the parent, the juvenile, the guardian, any foster parent, relative, or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid in its review. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.
In each case the court shall consider the following criteria and make written findings regarding those that are relevant:
(1) Services which have been offered to reunite the family, or whether efforts to reunite the family clearly would be futile or inconsistent with the juvenile's safety and need for a safe, permanent home within a reasonable period of time.
(2) Where the juvenile's return home is unlikely, the efforts which have been made to evaluate or plan for other methods of care.
(3) Goals of the foster care placement and the appropriateness of the foster care plan.
(4) A new foster care plan, if continuation of care is sought, that addresses the role the current foster parent will play in the planning for the juvenile.
(5) Reports on the placements the juvenile has had and any services offered to the juvenile and the parent, guardian, custodian, or caretaker.
(6) An appropriate visitation plan.
(7) If the juvenile is 16 or 17 years of age, a report on an independent living assessment of the juvenile and, if appropriate, an independent living plan developed for the juvenile.
(8) When and if termination of parental rights should be considered.
(9) Any other criteria the court deems necessary.
N.C. Gen. Stat. § 7B-906(c).
Respondent's initial argument is that findings of fact numbers five and six in the review order are "whole-hearted adoptions" of DSS and guardian ad litem reports. However, respondent did not assign error to these findings of fact. Thus, the finding of facts are deemed supported by competent evidence and are conclusive on appeal. In re L.A.B., ___ N.C. App. ___, ___, 631 S.E.2d 61, 64 (2006).
Respondent next claims that the trial court made insufficient findings regarding the provision of services. N.C. Gen. Stat. § 7B-906(c)(1). However, the trial court ordered in 1999 that reunification efforts cease. Thus, a finding regarding services offered to respondent towards reunifying him with B.D. was not required because it was not relevant.
Respondent's next claim, regarding efforts at reunifying the family, concern findings of fact numbers eight and nine. Again, petitioner did not assign error to these findings of fact and they are thus binding on appeal. In re L.A.B., ___ N.C. App. at ___, 631 S.E.2d at 64. Furthermore, the court adopted a report from DSS which stated that it "[p]rovided paternal grandmother with guidance and direction in an attempt to facilitate establishment of a bond in a gradual process." However, the DSS report stated that the grandmother made no efforts to introduce herself to B.D. Thus, there were sufficient findings made regarding this criteria.
Respondent's next claim concerns a lack of findings regarding an appropriate visitation plan. N.C. Gen. Stat. § 7B-906(c)(6). The record shows that respondent raised the issue of visitation at the review hearing. In response, the court stated that "[v]isitation is not an issue until you're released from the Department of Corrections. That's an issue that has to be raised then." Thus, the court considered visitation, but because respondent was currently incarcerated, the court declined to make findings regarding an appropriate visitation plan because it was not relevant at that time.
Respondent's next claim is that the trial court failed to address whether termination of parental rights should be considered. N.C. Gen. Stat. § 7B-906(c)(8). Respondent contends that the court should have addressed why termination was not appropriate. However, the record shows that DSS determined that guardianship was in B.D.'s best interests, rather than termination, because guardianship would allow her to continue in her current, stable environment. Additionally, at the hearing, the court explained to respondent that by not seeking termination, respondent would have the right "at some time in the future to come into court, file a motion, and try and prove to the Court that you should be part of her life again." Thus, even assuming arguendo that the court's findings regarding this criteria was insufficient, respondent can show no prejudice. Therefore, we conclude that the trial court complied with N.C. Gen. Stat. § 7B-906(c).

B.
Respondent also contends that the trial court failed to comply with N.C. Gen. Stat. § 7B-906(g). We disagree.
The North Carolina General Statutes require the court to "verify that the person . . . being appointed as guardian of the juvenile understands the legal significance of the . . . appointment and will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. § 7B-906(g). Respondent asserts that no inquiry was made. However, in a DSS report, DSS stated that "[t]he current foster parents are willing to accept guardianship of this juvenile and have completed the application requirements to be considered the legal risk adoptive placement." Additionally, the guardian ad litem reported that "[t]he foster family has recently completed the process to become identified as [B.D.'s] legal risk adoptive placement." Further, the report stated that the guardian ad litem program supervisor had spoken with the foster mother and "she indicated that she and her husband loved [B.D.] and wanted to adopt her, but they would accept guardianship if the Court deemed that alternative appropriate." The trial court adopted these reports in its findings. Finally, both DSS and the guardian ad litem recommended that guardianship was the best option for B.D. Accordingly, we conclude that the trial court sufficiently complied with N.C. Gen. Stat. § 7B-906(g).

III.
Respondent contends that the trial court erred by granting guardianship of B.D. to her foster parents. Respondent claims that guardianships are difficult to alter, and the court should have chosen a less severe option that would have allowed him a chance to parent B.D. in the future. Respondent contends that the court should have simply awarded custody of B.D. to her foster parents. We disagree.
The North Carolina General Statutes provide that:
(b) At any permanency planning review, the court shall consider information from the parent, the juvenile, the guardian, any foster parent, relative or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid it in the court's review. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition. At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider the following criteria and make written findings regarding those that are relevant:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents[.]
N.C. Gen. Stat. § 7B-907(b)(1)-(2) (2005).
Here, in accordance with N.C. Gen. Stat. § 7B-907(b)(1), the trial court found that respondent was incarcerated and the projected release date was in 2008. In regard to B.D.'s mother, the court stated that DSS had been in contact with her, but that she did not follow through on any of the things she was supposed to do to be considered as a potential placement for B.D. Meanwhile, the court found that B.D. had lived with her foster parents for more than three years, and she continues to "flourish in the foster placement." In addition, the court found that it is in the best interest of B.D. to remain in the physical and legal custody of DSS for placement. Respondent did not assign error to any of these findings and they are binding. We therefore hold that the trial court properly concluded, after considering the criteria and making the appropriate findings in accordance with N.C. Gen. Stat. § 7B-907(b)(1) and (2), that guardianship with the foster parents should be established. Accordingly, we affirm.
Affirmed.
Chief Judge MARTIN and Judge LEVINSON concur.
Report per Rule 30(e).