IN RE: J.A.C., S.J.C.
No. COA08-509
Court of Appeals of North Carolina.
Filed October 7, 2008
This case not for publication
H. Lee Merritt, for petitioner-appellee.
Robert W. Ewing, for respondent-appellant.
Pamela Newell Williams, for appellee-guardian ad litem.
STROUD, Judge.
Respondent appeals orders terminating his parental rights. The issues before this Court are whether the trial court (1) failed to make sufficient findings of fact in its permanency planning order pursuant to N.C. Gen. Stat. §§ 7B-507(b) and -907, (2) made a finding of fact which was not based on sufficient evidence, and (3) made a conclusion of law which was not supported by the findings of fact and was an abuse of discretion. For the following reasons, we affirm.

I. Background
On 25 August 2006, Brenda Ashburn with the Surry County Department of Social Services ("DSS"), a social worker, filed petitions and affidavits alleging Jack and Sam[1] were neglected and dependent because
the father had left the home around 7:00 pm on 8-23-06 on a moped and had not returned home by 9:30 pm to care for the juveniles. The juvenile[s] stayed at a neighbor's home on 8-23-06 and returned to the home on 8-24-06 to get ready for school. The oldest juvenile went to the home around 6:30 am on 8-24-06 and noticed a foul odor in the home from burnt steaks that had been cooking in the oven all night. The neighbor, Ms. Sonya Mabry, provided care for and transported the juveniles to school on 8-24-06. Social Worker made a visit to the father's home at approximately 3:00 pm on 8-24-06 and found no one at the residence. Social Worker located the juvenile at Sonya Mabry's residence and learned that neither juvenile knew where their father had gone but that he was supposed to return at 9:00 pm the night of 8-23-06. The juvenile[s] ha[ve] no way to contact the father and no leads as to where he may be at this time. The father has failed to comply with the Family Services Case Plan that he entered into on 6-30-06.
This same day nonsecure custody of the children was given to DSS. On 30 August 2006, summons and notices of hearing were filed regarding DSS's petitions.
On or about 7 September 2006, social worker Ms. Brandy Staley ("Ms. Staley") and respondent entered into an "Out of Home Family Services Agreement" which contained a permanency plan for reunification. On 14 September 2006, Ms. Staley filed a disposition report recommending that "[t]he Court recognize that reasonable efforts to prevent the childrens removal from the home were not possible and it is in the children's best interest to remain in the custody of Surry County Department of Social Services" as respondent "has neither part-time nor full-time employment on a consistent basis[, and] . . . has admitted to having a substance abuse problem that causes him to make bad decisions." The 14 September 2006 report noted that there was an agreement with respondent which required him to "follow[] through with substance abuse/ mental health counseling, gain and maintain part-time/ full-time employment, [and] maintain current housing and basic physical needs."
On 19 September 2006, the trial court issued orders which left Jack and Sam in the custody of DSS. On 2 October 2006, Jack and Sam were adjudicated neglected and dependent. The disposition order read in pertinent part,
(3) [R]espondent-father, is currently unemployed. He has admitted to the DEPARTMENT OF SOCIAL SERVICES to having a substance abuse problem. He is attending counseling sessions and has entered into an out-of-home services agreement with the DEPARTMENT OF SOCIAL SERVICES.
. . . .
(5) The court finds that it would not be in the best interest of the juveniles and would be contrary to their welfare to be returned to the custody of the father at this time.
(6) The court finds that the DEPARTMENT OF SOCIAL SERVICES has made reasonable efforts to reunite the juveniles with the respondent-father but it would not be in the best interest of the juveniles to do so at this time.
. . . .
(3) The respondent-father is ordered and directed to cooperate with the DEPARTMENT OF SOCIAL SERVICES and the guardian ad litem and to comply with the terms and conditions of the family services case plan and to follow the recommendations of his substance abuse counselor.
On 20 November 2006, a notice of hearing was filed for a 90-day review hearing. On or about 28 November 2006, respondent's substance abuse counselor reported to Ms. Staley that respondent had seemingly been doing well, but that "[a]fter 10-12-06, he started using again (according to your positive tests), spent some time in jail, and just disappeared from our groups." This same date, Carolina Child and Family Services, Inc., which was providing outpatient treatment to Jack and Sam, sent a letter to the trial court recommending that the children not be reunited with respondent. On 30 November 2006, Ms. Staley filed a document for the 90-day review hearing noting that "it is not in the children['s] best interest to return to their father at this juncture." This same date, Jack and Sam's guardian ad litem report determined that, "reasonable efforts to prevent the children's removal from the home were not possible and it is in the children's best interest to remain in the custody of the Surry County Department of Social Services." On 6 December 2006, the trial court entered the review hearing order which determined that "it is not in the best interest of the child and it is contrary to the child's welfare to be returned to the home" as "respondent-father ha[d] not made any measurable progress in his out-of-home service agreement . . . . [and had] tested positive for cocaine[.]" On 12 April 2007, notice was filed for a permanency planning hearing. On 25 June 2007, the trial court entered the permanency planning order which found that reunification was not appropriate and approved a permanent plan of adoption. On or about 19 April 2007, Ms. Staley made a "Visitation and Contact Plan" which allowed respondent to visit Jack and Sam once a week for an hour. On or about 14 May 2007, respondent wrote a note requesting an appeal regarding the permanency planning order.
On 28 September 2007, DSS filed a motion to terminate respondent's parental rights. On or about 6 October 2007, defendant wrote a note requesting an attorney and that his parental rights not be terminated. On 24 October 2007, another notice of hearing was filed regarding the permanency planning hearing. On 8 November 2007, Ms. Staley's and the guardian ad litem's reports both recommended respondent's parental rights be terminated. A notice of hearing regarding "establish[ing] issues" was filed on 14 November 2007. On 12 December 2007, the trial court filed an order again approving the permanent plan of adoption for Jack and Sam and entered a pre-trial order establishing the issues as whether Jack and Sam were neglected juveniles and whether "respondent-father ha[d] willfully left the juvenile[s] in foster care for more than twelve . . . months without making reasonable progress[.]" On or about 28 December 2007, the guardian ad litem's report recommended respondent's parental rights be terminated. On 10 and 15 January 2008, orders were entered continuing respondent's hearing regarding terminating his parental rights. On 25 February 2008, the trial court terminated respondent's parental rights. Respondent appeals arguing the trial court (1) failed to make sufficient findings of fact in its permanency planning order pursuant to N.C. Gen. Stat. §§ 7B-507(b) and -907, (2) made a finding of fact which was not based on sufficient evidence to support it, and (3) made a conclusion of law that was not supported by the findings of fact and was an abuse of discretion.

II. Permanency Planning Order
In his first and third arguments, respondent contends the trial court failed to make sufficient findings of fact pursuant to N.C. Gen. Stat. §§ 7B-507(b) and -907 in its order ceasing reunification efforts entered after the permanency planning hearing.[2] However, in In Re V.L.B. a mother appealed from a permanency planning order, and this Court determined that her appeal was moot as the order terminating the mother's parental rights was
based upon G.S. § 7B-1111(a)(9) . . . and does not rely on the permanency planning order that is the subject of this appeal. Indeed, the court, after hearing the testimony of witnesses and admitting the entire "court file" into evidence, made independent findings and conclusions that do not rely on the permanency planning order. In the present case, like Stratton, any findings in the permanency planning order that are also in the [termination of parental rights] order are superceded by the latter.
In Re V.L.B., 164 N.C. App. 743, 744-45, 596 S.E.2d 896, 896-97 (2004) (citations and footnote omitted).
Just as in In Re V.L.B., the orders terminating respondent's parental rights were based upon N.C. Gen. Stat. § 7B-1111(a)(1) and (2) and did not rely on the permanency planning order. See id. at 745, 596 S.E.2d at 897. Furthermore, also as in In Re V.L.B., the trial court heard testimony and "made independent findings and conclusions that do not rely on the permanency planning order." See id. Pursuant to In Re V.L.B., we conclude that respondent's father's appeal regarding the permanency planning hearing is moot. See id.

III. Long-Term Placement of the Children
In his second briefed argument, respondent contends there was insufficient evidence for the trial court to find as fact that
[t]he father requested that the DEPARTMENT OF SOCIAL SERVICES consider placement of his children with his brother. The DEPARTMENT has investigated this possible placement but has indicated that it would not be appropriate. Other than this, the father has not made any proposal or other long-term plan for his children.
Respondent argues that the trial testimony shows that he did make proposals other than his brother for the placement of his children. Specifically, respondent contends he proposed his mother, his fiancée, and his two aunts.
Our standard of review for the termination of parental rights is whether the court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law. Our review of the trial court's findings of fact is limited to whether there is competent evidence to support the findings . . . .
In re Pope, 144 N.C. App. 32, 40, 547 S.E.2d 153, 158 (citations and quotation marks omitted), aff'd per curiam, 354 N.C. 359, 554 S.E.2d 644 (2001).
At respondent's termination of parental rights hearing, Brandy Wilkins ("Ms. Wilkins"), a social worker with DSS, testified that placement with respondent's brother was not appropriate and that to her knowledge respondent had not made any other suggestions for long-term placement. On cross-examination Ms. Wilkins further testified that respondent had mentioned the possibility of Jack and Sam living with his mother and fiancée, but at the time, respondent was also living with them in the same home. Later they were evicted from the home.
Though respondent may have mentioned other options for his children, the evidence does not indicate that respondent made a proposal for the actual "long-term" care of his children. The "clear, cogent, and convincing evidence" presented to the trial court through testimony and other documents was that respondent never suggested a viable option for the "long-term" care of his children. Id. Even assuming arguendo, that respondent did made proposals for the long-term placement of his children, the contested finding of fact is harmless because in uncontested finding of fact number thirteen the trial court found that "the father left that residence and began living with his mother and fiancée. Neither of these two (2) residences were suitable orappropriate for the juvenile and the juvenile's sibling to reside[,]" thus showing that respondent's "proposed placements" were considered and found unsuitable for Jack and Sam. See In re L.A.B., 178 N.C. App. 295, 298, 631 S.E.2d 61, 64 (2006) (citation and quotation marks omitted) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). Furthermore, the conclusions of law upon which respondent's parental rights were terminated do not depend on the contested finding of fact, thus again rendering it harmless. This argument is overruled.

IV. Best Interests of the Children
In his fourth, fifth, and sixth briefed arguments, respondent contends that the trial court erred in determining it was in the best interest of his children to terminate his parental rights. We disagree.
In his fourth and fifth arguments respondent contends that one of the trial court's conclusions of law was not supported by the findings of fact. In his brief respondent has as heading number four, "THE TRIAL COURT'S CONCLUSION OF LAW THAT IT WAS IN THE BEST INTERESTS OF THE CHILDREN TO TERMINATE THE RESPONDENT'S PARENTAL RIGHTS IN BOTH ORDERS OF ADJUDICATION WERE [sic] NOT SUPPORTED BY THE COMPETENT EVIDENCE OR BY THE FINDINGS OF FACT." (Emphasis in original.) Respondent's heading number five is a further attack on a subsection of the challenged conclusion of law regarding the best interests of the children. Beyond these headings, respondent makesno further argument and cites no law in support of his argument. We reject respondent's contentions.
There is a two-step process in a termination of parental rights proceeding. In the adjudicatory stage, the trial court must establish that at least one ground for the termination of parental rights listed in N.C. Gen. Stat. § 7A-289.32 (now codified as section 7B-1111) exists. In this stage, the court's decision must be supported by clear, cogent and convincing evidence with the burden of proof on the petitioner. . . . Once one or more of the grounds for termination are established, the trial court must proceed to the dispositional stage where the best interests of the child are considered. There, the court shall issue an order terminating the parental rights unless it further determines that the best interests of the child require otherwise.
In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001) (citations and quotation marks omitted).
The trial court based respondent's termination of parental rights on N.C. Gen. Stat. § 7B-1111(a)(1) and (2) which allow for termination of a parent's rights if,
(1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.
(2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
N.C. Gen. Stat. § 7B-1111(a)(1), (2) (2007).
The trial court found as fact as to each child that
8. The minor child has been in the custody of the DEPARTMENT OF SOCIAL SERVICES since August 24, 2006. The juvenile and the juvenile's sibilant have been in the custody of the DEPARTMENT OF SOCIAL SERVICES continuously since that date.
. . . .
10. On September 7, 2006, respondent-father was not employed. Pursuant to the family services cases plan which the father entered into on that date, the father agreed to seek and obtain full time, stable employment. The father worked at several different jobs between August 2006 and May 1, 2007. In September 2006, the father was employed through a temporary service and worked for 1 1/2 days. In December 2006, the father worked through another temporary service until mid-January 2007. Although the father reported that he was employed at other jobs, the caseworker was not able to confirm this.
. . . .
12. The father was placed in the custody of the Sheriff of Surry County as a result of criminal charges on May 1, 2007. Respondent-father has remained in the custody of the Sheriff of Surry County since that date. Prior to being placed in custody, the respondent-father did not comply with the provisions regarding employment that he agreed to on April 19, 2007.
13. Also, under the family services case plan as established in September 2006, the father agreed to maintain stable housing and provide for basic needs. From September 2006 until December 2006, the father remained at the residence where the juvenile was residing prior to being placed in the custody of the DEPARTMENT OF SOCIAL SERVICES. In December 2006, the father left that residence and began living with his mother and fiancée. Neither of these two (2) residences were suitable orappropriate for the juvenile and the juvenile's sibling to reside.
. . . .
15. Prior to being placed in the Sheriff's custody on May 1, 2007, the father did not find housing nor did he provide any information to the caseworker as requested.
16. According to the family services case plan, the father acknowledged that he had a problem with substance abuse. The father agreed to obtain a substance abuse evaluation, follow the recommendations for counseling, attending counseling and other appointments as scheduled, and submit to random drug tests.
17. The DEPARTMENT OF SOCIAL SERVICES attempted to have the father tested for drugs on 17 occasions; only three (3) tests were actually performed and one (1) of those test results were positive for illegal drugs.
18. The father did attend counseling between August 31, 2006, until November 12, 2006. He also received treatment and counseling between November 3, 2006, and November 10, 2006. The father enrolled in intensive out-patient counseling at the end of November 2006 where he was scheduled to attend three (3) times per week. He last attended the intensive out-patient counseling on February 2, 2007. The provider of the intensive out-patient counseling terminated the respondent-father's counseling in March 2007 as a result of the father's non-attendance.
19. In April 2007, the caseworker discussed with the father his need for to [sic] resume counseling and treatment for his substance abuse problems. The father agreed with the caseworker to make arrangements to obtain the counseling and treatment, but the father did not do so prior to being placed in the Sheriff's custody on May 1, 2007.
20. The DEPARTMENT OF SOCIAL SERVICES arranged for regular supervised visits between the father and his children. Between August 2006 and May 1, 2007, a total of 29 visits were scheduled; of these visits, the father missed 10 visits.
These findings, which are unchallenged, support the trial court's conclusion that respondent willfully left Jack and Sam "in foster care for more than twelve (12) months without making reasonable progress to correct those conditions which lead [sic] to the removal of the child from the home." This conclusion alone is enough to support the termination of respondent's parental rights. See N.C. Gen. Stat. § 7B-1111(a) ("The court may terminate the parental rights upon a finding of one or more of the following . . . [including that] [t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." (emphasis added)). This argument is without merit.
As to the determination that termination of parental rights is in the best interest of the children, N.C. Gen. Stat. § 7B-1110(a) provides that
[a]fter an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. In making this determination, the court shall consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile. (4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2007).
The trial court here determined in the challenged conclusion of law that
It would be in the child's best interest for the court to terminate the father's parental rights. In arriving at this conclusion, the court gave due consideration to the factors enumerated in N.C.G.S. §7B-110 [sic], to wit:
(a) the permanent plan for the juvenile and the juvenile's sibling is adoption;
(b) the termination of the father's parental rights will allow the adoption to go forward;
(c) it is very likely that both the juvenile and the juvenile's sibling will be adopted together;
(d) the bond between the juvenile and the juvenile's father is not strong and the relationship between the juvenile and the proposed adoptive parent is very good.
Respondent argues that "the trial court made no findings of fact to support these conclusions." Respondent is correct that there are no "findings of fact" designated as such in the orders as to the likelihood of adoption or the bonds between Jack and Sam and respondent or the proposed adoptive parent. However, we must look beyond the labels assigned by the order. See, e.g., In re R.A.H., ___ N.C. App. ___, ___, 641 S.E.2d 404, 409 (2007) ("If a finding of fact is essentially a conclusion of law it will be treated as a conclusion of law which is reviewable on appeal." (citation, quotation marks, ellipses, and brackets omitted)); Dunevant v.Dunevant, 142 N.C. App. 169, 173, 542 S.E.2d 242, 245 (2001) ("[A] pronouncement by the trial court which does not require the employment of legal principles will be treated as a finding of fact, regardless of how it is denominated in the court's order." (citations omitted)); Gibbs v. Wright; 17 N.C. App. 495, 498, 195 S.E.2d 40, 43 (1973) ("[T]hese `findings of fact' were not included in the agreed statement of facts and while they are actually more in the nature of conclusions of law than strictly factual findings, correctly considered as conclusions of law, they are supported by the agreed statement of facts, and it is immaterial that they were incorrectly included under the heading of `findings of fact' in the judgment.")
"A `conclusion of law' is a statement of the law arising on the specific facts of a case which determines the issues between the parties." In re Everette, 133 N.C. App. 84, 85, 514 S.E.2d 523, 525 (1999) (citation omitted). "Findings of fact are statements of what happened in space and time." State ex rel. Utilities Comm. v. Eddleman, 320 N.C. 344, 351, 358 S.E.2d 339, 346 (1987). Thus, conclusions of law and findings of fact are identified based upon their substance, not their labels. See, e.g., Eddleman at 351, 358 S.E.2d at 346; In re R.A.H. at ___, 641 S.E.2d at 409; Dunevant at 173, 542 S.E.2d at 245; In re Everette at 85, 514 S.E.2d at 525; Gibbs at 498, 195 S.E.2d at 43.
Although the trial court identified the statements challenged by respondent as conclusions of law, they are actually findings of fact. See Eddleman at 351, 358 S.E.2d at 346; In re Everette at 85, 514 S.E.2d at 525. This becomes clear when the findings of fact are set forth separately from the first sentence of the "conclusion of law." These facts are that:
(a) the permanent plan for the juvenile and the juvenile's sibling is adoption;
(b) the termination of the father's parental rights will allow the adoption to go forward;
(c) it is very likely that both the juvenile and the juvenile's sibling will be adopted together;
(d) the bond between the juvenile and the juvenile's father is not strong and the relationship between the juvenile and the proposed adoptive parent is very good.
These statements do not require the application of legal principles to the facts of the case; they are the facts of the case. It would have been better practice for the trial court to set these facts forth in the section of the orders denoted as "findings of fact," but the fact that "findings of fact" are mislabeled "conclusions of law" is not fatal as the orders disclose "each link in the chain of reasoning." See Eddleman at 352, 358 S.E.2d at 346. The trial court's findings of fact, labeled as "conclusions of law" reveal that the trial court did take into consideration the factors as required by N.C. Gen. Stat. § 7B-1110(a), and they properly led to the conclusion of law that it was in the best interest of the children for respondent's parental rights to be terminated.[3] Wealso note that the evidence fully supports these challenged findings of fact. This assignment of error is overruled.
Lastly, in his sixth briefed argument, respondent contends that the trial court abused its discretion in terminating his parental rights. We disagree. Based upon the evidence before us the trial court did not abuse its discretion in terminating respondent's parental rights. See In re A.R.H.B., ___ N.C. App. ___, ___ 651 S.E.2d 247, 253 (2007) ("The decision to terminate parental rights will not be overturned on appeal absent a showing that the decision was manifestly unsupported by reason." (citation omitted)).

V. Conclusion
For the foregoing reasons, we affirm the orders of the trial court terminating respondent's parental rights.
AFFIRMED.
Judges McGEE and McCULLOUGH concur.
Report per Rule 30(e).
NOTES
[1] Pseudonyms will be used to protect the identity of the juveniles involved in this case.
[2] Respondent also filed a petition for writ of certiorari requesting this Court review the permanency planning order; however, we deny this petition as we address these issues within this appeal. See In Re V.L.B., 164 N.C. App. 743, 596 S.E.2d 896 (2004).
[3] The trial court stated these findings and others regarding the children's best interests in much more substantial detail in the dispositional portion of the hearing. The written order unfortunately does not contain all of the findings made in open court, and we have limited our consideration to those findings in the written order.