An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-24

Filed: 15 September 2015

Cumberland County, Nos. 08 JT 130-31

IN THE MATTER OF: T.Y-S., N.S., Juveniles.

Appeal by respondent mother from order entered 16 September 2014 by Judge Edward A. Pone in Cumberland County District Court. Heard in the Court of Appeals 17 August 2015.

*Christopher L. Carr for petitioner-appellee.*

*Richard Croutharmel for respondent-appellant.*

*Beth A. Hall for Guardian ad Litem.*

GEER, Judge.

Respondent mother appeals from an order terminating her parental rights to her sons, T.Y-S. ("Tom") and N.S. ("Nate").[1] Respondent challenges the trial court's determination that grounds existed to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) (2013) (neglect), § 7B-1111(a)(2) (willful failure to make reasonable progress in correcting the conditions that led to the removal of the children from parent's custody), § 7B-1111(a)(3) (failure to pay costs), and § 7B-

---

[1]For ease of reading and to protect the identity of the minor children, we use the pseudonyms "Tom" and "Nate" throughout this opinion.

1111(a)(6) (dependency). We hold that the trial court's findings of fact, supported by clear, cogent and convincing evidence, support its conclusion that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(2) to terminate respondent's parental rights. Because we further conclude that the trial court did not abuse its discretion in determining that the children's best interests would be served by terminating respondent's parental rights, we affirm.

Facts

On 7 March 2008, the Cumberland County Department of Social Services ("DSS") filed a juvenile petition alleging three-year-old Tom and four-year-old Nate were neglected and dependent juveniles. DSS alleged that it received a report that the children were roaming the neighborhood alone and asking neighbors for food; that a social worker found respondent's home to be in disarray and observed marijuana stems in a shoe box located in respondent's bedroom; and that respondent admitted that she was stressed, financially unstable, and unable to take care of her sons. On 20 March 2008, DSS took nonsecure custody of the children.

By order entered 22 July 2008, the trial court adjudicated the children dependent based upon respondent's stipulation that she was unable to provide proper care and supervision for her sons, was unable to maintain suitable housing, and lacked an appropriate alternative child care plan. The court ordered respondent to obtain individual counseling, complete a parenting class, obtain substance abuse

counseling, take random drug tests, and comply with the DSS case plan; however, respondent would be relieved of these requirements if she enlisted in the military as she planned to do.

The trial court held a permanency planning hearing on 3 February 2009. In the Permanency Planning Order entered 23 February 2009, the trial court found that respondent had not entered the military and had not complied with the court's orders in that she sporadically attended individual and substance abuse counseling, occasionally submitted to drug tests, and tested positive for marijuana. The court concluded that respondent had willfully failed to comply with reunification efforts, suspended respondent's visitation, and ceased reunification efforts. By order filed 20 November 2009, the court awarded legal and physical custody of the children to the great uncle. The court waived further reviews and ordered aspects of previous court orders to remain in effect, which included the suspension of respondent's visitation.

Respondent filed a motion in July 2010 seeking custody of her children; however, the court dismissed the motion when respondent failed to appear for the scheduled hearing. In April 2011, respondent filed a motion for review requesting that the case be transferred to Forsyth County where the children were living with their maternal grandmother. The court held a hearing on 26 May 2011. By order filed 16 June 2011, the trial court found that Tom and Nate were currently residing in Winston-Salem, North Carolina, with the maternal grandmother, who had not

been approved by the court for placement, and that the maternal grandmother had allowed contact between respondent and her sons despite the court's no-contact order. The court dismissed respondent's motion, reopened the juvenile matter *sua sponte*, and ordered the custody of Tom and Nate be returned to DSS.

Following a hearing in August 2011, the trial court ordered that the permanent plan be custody with court approved caretakers or suitable relatives, and a concurrent plan of adoption. In a permanency planning order filed 29 November 2011, the trial court found that respondent indicated she had stable housing in Fayetteville, North Carolina, but refused to provide her address to DSS; that respondent indicated she was employed, but did not provide independent verification of her employment; and that respondent had not complied with orders of the court. The court changed the children's permanent plan to adoption. The trial court held a permanency planning hearing in March 2012 and, after several continuances, held another permanency planning hearing in March 2013.

On 3 July 2013, DSS filed a petition to terminate the parental rights of respondent and the fathers of Tom and Nate. The trial court conducted a hearing in June 2014. By order filed 16 September 2014, the court concluded grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), § 7B-1111(a)(2) (failure to make reasonable progress), § 7B-1111(a)(3) (failure to pay cost of care), and § 7B-1111(a)(6) (dependency). The court concluded

it was in Tom's and Nate's best interest to terminate respondent's parental rights. The trial court also terminated the fathers' parental rights. Respondent appeals.[2]

## Discussion

A termination of parental rights proceeding involves two separate phases: an adjudicatory stage and a dispositional stage. *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage, "the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). This Court determines on appeal whether the findings of fact are supported by clear, cogent, and convincing evidence and whether the conclusions of law are supported by the findings of fact. *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004).

"If the trial court concludes that the petitioner has met its burden of proving at least one ground for termination, the trial court proceeds to the dispositional phase and decides whether termination is in the best interests of the child." *In re L.A.B.*, 178 N.C. App. 295, 299, 631 S.E.2d 61, 64 (2006). We review the best interests determination for abuse of discretion. *Id.*

## Grounds for Termination

---

[2]The fathers do not appeal.

We first address respondent's arguments relating to the trial court's conclusion that grounds for termination existed under N.C. Gen. Stat. § 7B-1111(a)(2). This subsection provides for termination of parental rights where

> [t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

*Id.* To find grounds to terminate parental rights under this subsection, the trial court must conduct a two-part analysis. The trial court must determine that: (1) the "child has been willfully left by the parent in foster care or placement outside the home for over twelve months" and (2) "the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child." *In re O.C. & O.B.*, 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (2005).

"Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001). Further, " '[a] finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children.' " *In re O.C. & O.B.*, 171 N.C. App. at 465, 615 S.E.2d at 396 (quoting *In re Nolen*, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995)).

The trial court made the following pertinent findings of fact relevant to respondent's failure to make reasonable progress to correct the conditions that led to the children's removal from the home:

18. The issues which lead [sic] to the removal of the juveniles on or about March 20, 2008 included improper supervision of the juveniles by the Respondent Mother, instability, inappropriate conditions of the home, and the Respondent Mother's substance abuse issues and mental health issues.

. . . .

23. On or about July 8, 2008, at the Adjudication and Disposition hearing, the Respondent Mother was ordered to do the following: engage in individual counseling; engage in and successfully complete parenting classes; engage in substance abuse counseling; engage in random drug testing; and initiate and comply with the Out-of-Home Family Services Case Plan.

24. On or about October 28, 2008, the court ordered that the Respondent Mother complete a parenting assessment and a psychological evaluation and follow through with all of the recommendations thereof including that the Respondent Mother participate in individual counseling as well as family counseling.

. . . .

26. The Respondent Mother has failed to complete substance abuse counseling and treatment. The Respondent Mother was allowed visitation with the juveniles contingent upon two (2) consecutive negative drug screens; however, the Respondent

Mother only submitted to random drug screens sporadically and failed to appear for the majority of the requested screenings. That additionally on or about January 28, 2009 Respondent Mother tested positive for marijuana. That the Respondent Mother maintains that she does not have substance abuse issues of long standing and enduring nature. That the Respondent Mother indicated that her substance abuse issues stem from a sexual assault that occurred during the course of these proceedings. That the Respondent Mother indicated having engaged in substance abuse treatment through ACTS in 2012 and with Trust the Process. The Social Worker was able to make contact with Trust the Process and verify that the Respondent Mother was involved in treatment; however, no documentation verifying the Respondent Mother's participation has been produced. That no evidence has been produced that the Respondent Mother ever completed substance abuse treatment with either ACTS or Trust the Process.

27. The Court relieved [DSS] of reunification and visitation efforts with the Respondent Mother on February 3, 2009, due to the Respondent Mother's noncompliance with the orders of the court and lack of progress. At that time, visitation between the Respondent Mother and the juveniles was suspended.

28. The Respondent Mother has mental health issues which remain untreated. The Respondent Mother continues to deny any mental health issues or substance abuse issues. The Respondent Mother completed the psychological evaluation that was ordered; however it was not completed until well after [DSS] was relieved of reunification and visitation efforts. The Respondent Mother has not completed a parenting assessment. The Respondent Mother has attended some counseling sessions but

failed to complete them. The Respondent Mother's participation in counseling has been sporadic. She has indicated a previous diagnosis of Bipolar disorder, and this Court has found that her behaviors and actions would tend to corroborate that; however, she has not remained in counseling or treatment of any kind on a consistent basis to further address her needs.

. . . .

31. That in February 2010 the Respondent Mother relocated to the State of Texas. That the Respondent Mother indicated needing a "fresh start." That while she was residing in Texas the Respondent Mother was residing with friends and associates. That in March 2011 the Respondent Mother moved back to the State of North Carolina. That following her return to North Carolina the Respondent Mother attended a family gathering for the Easter holiday at the home of the Maternal Grandmother. That the juveniles were present at that time as they were staying with the Maternal Grandmother. That the Respondent Mother indicated that during that visit which lasted approximately six (6) hours the Maternal Uncle contact[ed] both the Respondent Mother and the Maternal Grandmother and informed them that the Respondent Mother's contact with the juveniles was not allowed.

. . . .

37. The Respondent Mother has developed a pattern of instability. She moves from place to place and from people to people. The Respondent Mother has failed to engage in services on a consistent basis. She has, over the years started and stopped numerous things, never committing to complete them. She started and stopped treatment. She did not fully engage. When the Respondent Mother finally did start

services, she jumped from provider to provider. She started QSAP services with [DSS]; however, her participation was 50/50 at best and she missed and/or failed to appear at numerous drug screens. She attended ACTS for only a short period of time. She went to Trust the Process where she has obtained a prescription note for a diagnosis. (The documents indicating treatment there came after the filing of the Petition to Terminate Parental Rights without indication of successful completion.) The Respondent Mother has demonstrated a start and stop pattern in many aspects of life. She started and continues to start and stop school including Fayetteville Technical Community College, Forsyth Tech, Methodist College, and New Coastal Carolina. The Respondent Mother received financial aid, but has not completed a program to date. She started but did not remain with the military. She started but never fully engaged in substance abuse counseling and treatment on a consistent basis. She never engaged in therapy on a consistent basis.

To the extent respondent does not contest these findings on appeal, they are deemed to be supported by competent evidence. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Respondent specifically challenges Finding of Fact Nos. 26, 28, and 37 as lacking the necessary evidentiary support. We address each challenged finding in turn.

Respondent first takes issue with the portion of Finding of Fact No. 26 in which the court found she did not complete substance abuse treatment. Respondent contends this finding is not supported by the evidence because she participated in substance abuse counseling in 2008 and she completed substance abuse counseling

"[t]his year." Although respondent testified that she completed a drug treatment program, she did not provide any documentation to confirm her completion, as the court found. Further, respondent's sporadic participation in substance abuse counseling in 2008 does not equate to the completion of a substance abuse program. Accordingly, we conclude Finding of Fact No. 26 is supported by competent evidence.

Respondent takes exception to the first sentence in Finding of Fact No. 28 that she has untreated mental health issues. The evidence in the record shows that respondent was diagnosed with bipolar disorder in 2012. In 2013, a second physician indicated that her issues were not due to bipolar disorder, but rather were a presentation of substance abuse issues. Although respondent was ordered to obtain individual counseling, the DSS social worker assigned to the case in 2008 testified that respondent sporadically participated with the personal family counseling. Further, respondent testified that she stopped individual counseling when DSS ceased reunification efforts in February 2010. Thus, the evidence shows that, regardless whether respondent's mental health issues stemmed from bipolar disorder or substance abuse issues, at the time of the hearing she was not being treated. This evidence is sufficient to support the trial court's finding.

We note that respondent also takes exception to the trial court's observation in Finding of Fact No. 28 that respondent's "behaviors and actions would tend to corroborate" her bipolar disorder diagnosis because the trial court "failed to establish

a foundation for such an observation." Even assuming, without deciding, that this finding was improper, "erroneous findings unnecessary to the determination do not constitute reversible error" where an adjudication is supported by additional valid findings. *In re T.M.,* 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006). Because there is sufficient evidence in the record that respondent was diagnosed with bipolar disorder in 2012, the trial court's additional observation regarding that diagnosis is immaterial to the merits of the order.

Lastly, respondent challenges Finding of Fact No. 37, arguing that her discharge from the military and her failure to complete community college should not be seen as indicative of instability. The trial court goes on to explain in Finding of Fact No. 37 that respondent has a pattern of starting and stopping, without completing schooling, treatment, and therapy. Respondent's own testimony supports the finding that she enlisted in the National Guard in March 2009 and was discharged in January 2010; that she attended Fayetteville Tech from 2012 to 2013, and recently enrolled at Coastal Carolina Community College. The trial court properly found, based upon respondent's testimony, that her inability to follow through with plans constitutes instability in her life. We conclude this portion of Finding of Fact No. 37 is supported by clear, cogent, and convincing evidence.

In asserting error in the trial court's conclusion, respondent disputes that she willfully failed to make reasonable progress in correcting the conditions that led to

the removal of Tom and Nate. Respondent essentially asserts that her actions could not be willful "[g]iven that reunification efforts had been ceased for several years" and because she has made legal attempts to get her children back into her custody. She also argues that the trial court failed to make a finding that her failure to obtain custody of her children was not due to her poverty. We are unpersuaded by respondent's arguments.

It is well established that, under N.C. Gen. Stat. § 7B-1111(a)(2), "willfulness does not require a showing of fault by the parent." *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). Further, "[a] finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." *In re Nolen*, 117 N.C. App. at 699, 453 S.E.2d at 224.

The trial court's findings of fact show that the children were removed from respondent's home due to improper supervision of the children by respondent, instability, inappropriate conditions of the home, and respondent's substance abuse and mental health issues. The trial court's findings, which we have concluded are supported by substantial evidence in the record, show that respondent has not adequately addressed the issues that caused the children's removal. Specifically, respondent failed to comply with court orders to complete substance abuse treatment programs, failed to complete a parenting assessment, and has only sporadically participated in counseling sessions. Respondent failed to maintain stable housing

while her sons were in DSS custody, and she was inconsistent with her progress. These findings of fact demonstrate that respondent's attempts to make progress toward regaining custody of Tom and Nate fell short of reasonable efforts. *See In re A.R.H.B. & C.C.H.L.*, 186 N.C. App. 211, 222, 651 S.E.2d 247, 255 (2007) (holding findings that during time children were in foster care, mother failed to complete the substance abuse treatment program, tested positive for drugs, never successfully completed parenting classes, and failed to maintain any permanent and stable employment sufficient to support termination of parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2)). Accordingly, we hold that the trial court did not err in concluding that termination of respondent's parental rights was justified pursuant to § 7B-1111(a)(2).

Because we hold that the trial court properly found a sufficient basis for termination of parental rights under § 7B-1111(a)(2), we need not address respondent mother's arguments as to § 7B-1111(a)(1), (3) or (6). *See In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground . . . found by the trial court."). We also need not address respondent's arguments regarding findings of fact relating to the other three grounds.

### Best Interests

Respondent next contends the trial court erred in its determination that it was in the best interest of Tom and Nate to terminate respondent's parental rights. We disagree.

Once a trial court determines that statutory grounds for termination exist, it must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2013). This statute requires that in making its determination

> the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1)  The age of the juvenile.
>
> (2)  The likelihood of adoption of the juvenile.
>
> (3)  Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4)  The bond between the juvenile and the parent.
>
> (5)  The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6)  Any relevant consideration.

*Id.* Although N.C. Gen. Stat. § 7B-1110(a) requires the trial court to consider all six of the enumerated factors, it is required to enter written findings of fact "concerning only those factors 'that are relevant.' " *In re D.H., D.H., K.H.*, ___ N.C. App. ___, ___ ,

753 S.E.2d 732, 735 (2014) (quoting *In re J.L.H.*, 224 N.C. App. 52, 59, 741 S.E.2d

333, 338 (2012)).

The court's dispositional findings of fact are as follows:

4.    The juvenile [Tom] is approximately ten (10) years old.  The juvenile [Nate] is approximately nine (9) years old.  The juveniles are very young.  The likelihood of adoption is great.  The juveniles are in a potential adoptive home.  They are placed together and have been in this home since mid[-]August 2012.

5.    The permanent plan in these matters is adoption.  Termination of parental rights is essential for achievement of the permanent plan.

6.    There is no bond between the juveniles and the Respondent Fathers. . . .  Respondent Mother . . . did have a substantial bond to the juveniles at the time of removal; however, today the bond has significantly lessened.

7.    The juveniles have a very good relationship with the potential adoptive parents, [The Ds].  They have lived with the [D.] family for almost two years.  The juveniles are very bonded to the [Ds].  They have been integrated into their family and they see them as Mom & Dad.  They go on family outings together and have been accepted by the extended family as well.  The current therapist noted that while they love both foster parents, they love [Mr. D.] "to death."  The therapist's testimony indicates a substantial degree of attachment, love, and respect for the [Ds].  They have structure and routine.  The home is one of caring and love.  It is a safe and nurturing environment without the turmoil and drama the boys have experienced in the past.

8.     The foster parents are providing a safe, loving, and nurturing environment for the juveniles. The foster parents wish to adopt the juveniles. The juveniles are each doing exceptionally well in the current placement. The juveniles have been in the current placement for approximately two (2) years. The juveniles are now safe and free from potential harm.

9.     This Court is very mindful of the gravity of this situation. Parents have a constitutional right to raise their children and, for those that are people of faith, a God given right as well. However, along with that right comes an awesome responsibility to love, nurture, protect and provide for the juveniles. . . .

. . . .

11.    The juveniles are in need of stability. Relative placement was previously attempted in this matter; however, it was unfortunately unsuccessful. When faced with the choice between therapeutic placement and relative placement, the Court selected the relative placement. The Court developed a plan with [DSS] and the relative and transitioned the boys into the home of the Maternal Great Uncle. The juveniles by all reports did well in his care; unfortunately, within a very short period of time, he had placed the juveniles with the Maternal Grandmother and the Respondent Mother followed shortly thereafter, resulting in chaos yet again. The juveniles are now placed in a two (2) parent home and are safe. The juveniles now have the stability that they have long sought. They are now in a family that has opened their arms to the juveniles and willingly accepted them.

Respondent does not assert that the court did not make findings required by

N.C. Gen. Stat. § 7B-1110(a). Rather, respondent argues the court abused its

discretion in terminating parental rights when it impermissibly considered "God" and the "two-parent" home in determining the children's custody.

In Finding of Fact No. 9, the trial court noted that "[p]arents have a constitutional right to raise their children and, for those that are people of faith, a God given right as well." Respondent argues that this reference to God amounted to "an improper comparison of Respondent's religious beliefs with those of the foster parents." In making this logical leap, respondent takes this portion of the finding completely out of context. When reading Finding of Fact No. 9 as a whole, the trial court was simply expressing that it was "mindful of the gravity" of terminating parental rights, and attempting to highlight the importance of the right. There is no indication in the termination of parental rights order, or in the record, that the trial court's reference to God was a comparison of respondent's religious beliefs to those of the foster parents.

We likewise reject respondent's contention that the trial court's reference to a two parent home shows a bias for placing the children in a two-parent home where the parents are married. The court's findings of fact demonstrate that it gave adequate consideration to the relevant statutory factors, including the ages of the juveniles, their bond with respondent, relationships with their current placement, the likelihood of adoption, and the degree to which termination of parental rights would facilitate achievement of the permanent plan. There is no meaningful

indication that the trial court's decision to terminate respondent's parental rights hinged on the children being placed in a two-parent home, nor religious faith. Indeed, the trial court's findings show that the determining factor was that Tom and Nate were in a safe home.

We hold that the trial court's conclusion that it was in the best interests of the juveniles to terminate respondent's parental rights was not manifestly unsupported by reason. Therefore, the trial court did not abuse its discretion. *See In re S.C.R.*, 198 N.C. App. 525, 536, 679 S.E.2d 905, 912 (2009) (holding that trial court's findings reflected reasoned decision based upon statutory factors listed in N.C. Gen. Stat. § 7B-1110(a) and that, therefore, trial court did not abuse its discretion in determining termination of parent's parental rights was in best interests of child).

Finally, we note that DSS and the guardian ad litem filed a Motion for Rule 11 Sanctions on the grounds that respondent's arguments have no merit. We deny the motion.

AFFIRMED.

Judges STROUD and TYSON concur.

Report per Rule 30(e).