TYSON, Judge.
*121 Respondent-mother appeals from an order terminating her parental rights as to the minor children "M.Z.M." and "T.Q.N.C." We affirm the trial court's order.
I. Factual Background
On 25 March 2014, Wake County Human Services ("WCHS") filed a juvenile petition alleging that two-year-old M.Z.M. was abused and neglected and six-year-old T.Q.N.C. was neglected. Both children lived with Respondent-mother until WCHS took them into nonsecure custody on 25 March 2014. At the time the petition was filed, Respondent-mother was under arrest and detained in Wake County Detention Center on a charge of felonious child abuse. M.Z.M.'s biological father was alleged to be incarcerated in Pitt County, North Carolina, and the whereabouts of T.Q.N.C.'s putative father were unknown.
Pursuant to a stipulation of facts entered by Respondent-mother and WCHS, the trial court adjudicated M.Z.M. and T.Q.N.C. as abused and neglected juveniles as defined by N.C. Gen. Stat. § 101(1) and (15) (2015). While inconsequential to Respondent-mother's appeal of the termination of her parental rights, we note the trial court adjudicated T.Q.N.C. abused and neglected where WCHS's petition alleged T.Q.N.C. was neglected and did not allege abuse of T.Q.N.C. The court found:
5. [T.Q.N.C.] is of school age and has not been regularly enrolled in school by the parents.
6. The mother was living in a hotel for the four months prior to the filing of the petition while working and looking for permanent housing but otherwise the parents have not provided stable housing for the children and have had insufficient income to meet the needs of the children.
7. The children have been exposed to domestic violence in the home between the mother and her boyfriend, Carlos [A].
8. On or about March 19, 2014 [M.Z.M.] was seriously burned on his thigh, ear and buttocks and was in need *122 of medical treatment for second degree burns that were *24 causing pain and discomfort for the child. The mother is alleged to have caused these burns intentionally and has been charged with child abuse regarding these burns.
9. A serious physical injury was inflicted on [M.Z.M.] by other than accidental means while in the mother's home with Carlos [A]. There was a substantial risk of serious physical injury to [T.Q.N.C.] by other than accidental means.
10. The mother does not admit to intentionally causing these injuries but would stipulate that there is sufficient evidence from which the Court could find by clear and convincing evidence that the burns were not as a result of excusable neglect, happened while the children were in her care and that the mother did not seek medical treatment for the child as a result of being fearful of Carlos [A.] who was in the home when the injuries occurred....
....
12. The mother remains in custody for the pending charges related to [M.Z.M.'s] abuse and neither putative father has stepped forward at this time to submit to be considered for placement of the children.
....
18. [M.Z.M. and T.Q.N.C.] do not receive proper care, supervision, or discipline from their parents and live in an injurious environment.
The trial court suspended Respondent-mother's visitation with the children while she remained incarcerated. It ordered Respondent-mother to enter into an Out of Home Services Agreement with WCHS to include a visitation plan and the following additional requirements: (1) obtain and maintain housing and income sufficient for herself and the children; (2) obtain a psychological evaluation and substance abuse assessment and follow any treatment recommendations; (3) abstain from drug use and submit to random drug screens; (4) complete a parenting class and "demonstrate skills learned;" and (5) maintain regular contact with her WCHS social worker.
Respondent-mother remained incarcerated pending trial at the time of the ninety-day review hearing on 14 July 2014. In its resulting order *123 entered 1 August 2014, the court noted that M.Z.M. "has been able to point to his burn and without prompting state that his mother's boyfriend Carlos did it." The court reiterated the requirements of Respondent-mother's case plan.
On 29 July 2014, Respondent pled guilty to felonious child abuse by grossly negligent omission, which resulted in serious bodily injury to M.Z.M. She received a suspended prison sentence and was released onto probation.
At a hearing on 12 January 2015, Respondent-mother did not appear and the trial court established a permanent plan of adoption for M.Z.M. and T.Q.N.C. The court found that Respondent-mother's whereabouts were unknown, she had failed to contact WCHS, and that WCHS had been unable to contact her. It further found that Respondent-mother had "failed to comply with her treatment plan and has made no progress in correcting the conditions that brought the children into foster care." The court relieved WCHS of further reunification efforts and directed Respondent-mother to comply with the conditions of her case plan "if she is interested in reunification."
WCHS filed a motion to terminate Respondent-mother's parental rights on 2 June 2015. Respondent-mother was arrested in September 2015 on new criminal charges of felonious obtaining property under false pretenses and possession of a counterfeit instrument, misdemeanor resisting a public officer, and for violating her probation. On 16 December 2015, the superior court revoked Respondent-mother's probation. The superior court activated her minimum 25 months to maximum 42 months sentence for felonious child abuse.
After a termination of parental rights hearing, and the court terminated Respondent-mother's parental rights on 18 April 2016. As grounds for termination, the court found that Respondent-mother had (1) "abused and neglected the children ... and it is probable that there would be a repetition of the neglect if the children were returned to the care of the mother," (2) "willfully left the children in foster care for more than *25 twelve (12) months without showing to the satisfaction of the court reasonable progress ... in correcting the conditions which led to the removal of the children," and (3) "willfully abandoned the children for at least six months immediately preceding" WCHS's filing of the motion to terminate her parental rights. See N.C. Gen. Stat. § 7B-1111(a)(1), (2) and (7) (2015). The court further found that termination of Respondent-mother's parental rights to be in M.Z.M. and T.Q.N.C.'s best interests. *124 II. Jurisdiction
Jurisdiction lies in this Court of right by timely appeal from final judgment of the court in a juvenile matter pursuant to N.C. Gen. Stat. § 7B-1001 (2015).
III. Issue
On appeal, Respondent-mother claims she received ineffective assistance of counsel ("IAC") at the termination hearing.
IV. Standard of Review
"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington , 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-93 (1984).
Pursuant to N.C. Gen. Stat. §§ 7B-1101.1 and 7B-1109(b) (2015), "[p]arents have a statutory right to counsel in all proceedings dedicated to the termination of parental rights. This statutory right includes the right to effective assistance of counsel." In re Dj.L ., 184 N.C.App. 76, 84, 646 S.E.2d 134, 140 (2007) (citations and quotation marks omitted).
IV. Analysis
A. Ineffective Assistance of Counsel
"A claim of ineffective assistance of counsel requires the respondent to show that counsel's performance was deficient and the deficiency was so serious as to deprive the represented party of a fair hearing." In re Oghenekevebe , 123 N.C.App. 434, 436, 473 S.E.2d 393, 396 (1996). Where an IAC claim is based on an allegation of defective performance by counsel, the respondent must show she was prejudiced by counsel's supposed deficiencies. See In re L.C. , 181 N.C.App. 278, 283, 638 S.E.2d 638, 641, disc. review denied , 361 N.C. 354, 646 S.E.2d 114 (2007) ; see also In re Bishop , 92 N.C.App. 662, 665-66, 375 S.E.2d 676, 679 (1989).
"The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." State v. Braswell , 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland , 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
*125 Respondent-mother faults counsel for failing to present any evidence or argument during the adjudicatory phase of the termination hearing. She asserts counsel's failure to advocate in any way whatsoever during the grounds phase of the termination proceeding denied her a fair hearing.
B. Phases of Hearing
A hearing to terminate parental rights includes an adjudicatory phase and, if necessary, a dispositional phase. See N.C. Gen. Stat. §§ 7B-1109, -1110(a), (c) (2015). In the adjudicatory phase, the trial court determines whether the petitioner has met its burden to show by "clear and convincing" evidence that grounds authorizing the termination of parental rights exist. N.C. Gen. Stat. § 7B-1111(b) (2015). "If the trial court concludes that the petitioner has met its burden of proving at least one ground for termination, the trial court proceeds to the dispositional phase and decides whether termination is in the best interests of the child." In re L.A.B. , 178 N.C.App. 295, 299, 631 S.E.2d 61, 64 (2006). "Under N.C. Gen. Stat. § 7B-1111(a), the trial court need only find that one statutory ground for termination exists in order to proceed to the dispositional phase and decide if termination is in the child's best interests." Id . at 298-99, 631 S.E.2d at 64.
*26 C. Testimony
WCHS called two witnesses during adjudication: Respondent-mother and WHCS social worker Jeanette Johnson, who had been assigned to Respondent-mother's case since September 2014. Respondent-mother testified at length regarding the fathers' lack of involvement with M.Z.M. and T.Q.N.C.; her own conduct after absconding probation in July 2014; and her subsequent decisions to avail herself of substance abuse treatment, mental health services, and GED and parenting classes following her incarceration in September 2015. Ms. Johnson described the circumstances that led to M.Z.M. and T.Q.N.C.'s adjudications as abused and neglected juveniles in 2014; the requirements of Respondent-mother's court-ordered case plan; and her failure to contact WCHS, to visit or inquire about her children, or to work on her case plan. Ms. Johnson testified she had no contact with Respondent-mother prior to November 2015, when she learned through the Department of Public Safety and from Respondent-mother's mother that Respondent-mother was arrested and jailed in Edgecombe County.
Respondent-mother correctly asserts her counsel asked no questions of WCHS's witnesses, nor presented any evidence or argument *126 during adjudication, and told the trial court that he did not "wish to be heard." At disposition, however, counsel called Respondent-mother to testify and argued to the court that terminating her parental rights would be contrary to M.Z.M. and T.Q.N.C.'s best interests.
In its adjudicatory findings, the trial court recounted M.Z.M. and T.Q.N.C.'s prior adjudications as abused and neglected juveniles and listed the requirements of Respondent's case plan. In support of its conclusion that grounds exist to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (7), the court made the following additional findings:
16. The mother pled guilty to felony child abuse for the injuries [M.Z.M.] suffered. She was given probation and released from incarceration. The mother absconded from probation almost immediately upon her release from incarceration and she did not participate in case services or visits with the children.
17. The mother absconded from probation to use marijuana, cocaine, and alcohol and did not visit with the children for fear of being arrested at a visit. The mother was not regularly employed and lived from place to place without appropriate housing. She did not call to inquire into the well being of the children and did not provide gifts, letters, or financial support for the children.
18. The mother remained an absconder from probation until September 2015 when she was arrested on new charges. The mother did not contact the social worker when she was arrested. The social worker found that mother was incarcerated and sought the mother out.
19. The mother's probation was revoked and she is now serving an active sentence and has a projected release date of June 2017.
20. The mother has not visited with either child since they were removed from her care in March 2014. The mother has not had housing or income since March 2014. The mother never submitted to a psychological evaluation, never participated in parenting education, never had a Substance Abuse Assessment, and had no contact with the social worker.
*127 Respondent-mother does not contest any of these adjudicatory findings. They are binding on appeal. In re S.N. , 194 N.C.App. 142, 147, 669 S.E.2d 55, 59 (2008), aff'd per curiam , 363 N.C. 368, 677 S.E.2d 455 (2009).
With regard to counsel's lack of advocacy during the adjudicatory phase, Respondent-mother specifically cites counsel's failure to question her about the services she had accessed and utilized in prison, her "changed perspective on life" since September 2015, and the "likely" fact that she "was no longer in a relationship with" Carlos A. Respondent-mother suggests counsel should have "prepared [her] to testify" on these issues prior to the hearing. She further faults counsel for failing to subpoena her prison case manager to testify about the services *27 she had accessed or to obtain a printout of her accomplishments from the case manager.
Regarding counsel's failure to cross-examine Ms. Johnson, Respondent-mother argues counsel could have asked the social worker about the services Respondent-mother had obtained while in prison and about M.Z.M.'s statements attributing his burns to Carlos A. Respondent-mother contends counsel should have argued that she was unlikely to repeat her prior neglect of her children, she had shown reasonable progress in correcting the conditions that led to their removal from the home, and her lack of involvement with the children or WCHS was not willful but the result of "unwise choices" caused by stress and depression. See N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (7).
"It is well established that attorneys have a responsibility to advocate on the behalf of their clients." In re S.N.W ., 204 N.C.App. 556, 560, 698 S.E.2d 76, 79 (2010). It is also true "[i]neffective assistance of counsel claims are not intended to promote judicial second-guessing on questions of strategy and trial tactics." State v. Brindle , 66 N.C.App. 716, 718, 311 S.E.2d 692, 693-94 (1984). The reviewing " 'court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " State v. Roache , 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004) (quoting Strickland , 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694 ). Furthermore, "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." Braswell , 312 N.C. at 563, 324 S.E.2d at 249.
In State v. Taylor , 79 N.C.App. 635, 636-37, 339 S.E.2d 859, 860-61, disc. review denied , 317 N.C. 340, 346 S.E.2d 146 (1986), the defendant's counsel remained silent during the defendant's sentencing hearing, *128 a critical stage of criminal proceedings to which the right to effective assistance of counsel applies. While this Court found an "absence of positive advocacy" by counsel at sentencing, we concluded this conduct did not "constitute[ ] deficient performance prejudicial to the defendant." Id . Based upon the record, we found no reason to conclude that counsel's decision to remain silent was anything other than "strategy and trial tactics." Id . at 638, 339 S.E.2d at 861.
We reviewed the transcript of Respondent-mother's termination hearing in its entirety. It appears counsel's decision to essentially concede the existence of grounds for termination under N.C. Gen. Stat. § 7B-1111(a) was a tactical concession similar to counsel's silence in Taylor . The existence of these grounds had been previously stipulated to by Respondent-mother. While counsel's choice of tactics was "troublesome," Respondent-mother has failed to show prejudice or that counsel's conduct undermined the fundamental fairness of the proceeding. Taylor , 79 N.C.App. at 637, 339 S.E.2d at 861.
Among the statutory grounds for termination alleged by WCHS was that Respondent had "willfully abandoned the juvenile[s] for at least six consecutive months immediately preceding the filing of the ... motion[.]" N.C. Gen. Stat. § 7B-1111(a)(7). The following standard applies when assessing the existence of grounds for termination under subdivision (a)(7):
Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child. The word "willful" encompasses more than an intention to do a thing; there must also be purpose and deliberation.
In re Adoption of Searle , 82 N.C.App. 273, 275, 346 S.E.2d 511, 514 (1986) (citations omitted). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." Id. at 276, 346 S.E.2d at 514.
WCHS filed its motion to terminate Respondent-mother's parental rights on 2 June 2015, making the period between 2 December 2014 and 2 June 2015 the determinative six months for purposes of N.C. Gen. Stat. § 7B-1111(a)(7). During her testimony at the termination hearing, Respondent-mother acknowledged: (1) she did no work on her case *28 plan, (2) absconded and did not contact her WCHS social worker, and (3) never visited either M.Z.M. or T.Q.N.C. while she was free on probation, from 29 July 2014 to 20 September 2015. *129 Respondent-mother claimed, without supporting documentation, that she was employed during the first half of 2015. By her own admission, Respondent-mother chose not to visit her children or contact her social worker, for fear of being arrested. In light of her actions during the relevant six-month period, Respondent-mother has failed to show any reasonable probability the trial court's adjudication of grounds to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a)(7) would have been avoided, if counsel had proffered additional evidence or argument regarding Respondent-mother's access to services after being imprisoned in September 2015. See, e.g. , In re B.S.O. , 234 N.C.App. 706, 713, 760 S.E.2d 59, 65 (2014) (finding of fact that respondent-father willfully abandoned the children was not error where he made only one phone call to respondent-mother and his children during the six months immediately preceding the filing of the petition to terminate his parental rights); In re Hendren , 156 N.C.App. 364, 368, 576 S.E.2d 372, 376 (2003) (holding an incarcerated parent "will not be excused from showing interest in the child's welfare by whatever means available").
M.Z.M.'s attribution of his injuries to Respondent-mother's boyfriend was subordinate to her subsequent wholesale abandonment of her two children. The trial court's 1 August 2014 review order includes a finding that M.Z.M. had identified Carlos A. as the person who inflicted his burns. However, Respondent-mother pled guilty to felonious child abuse, she deliberately failed to disclose M.Z.M.'s injuries to her family, or to seek medical care for her seriously burned toddler.
Respondent-mother argues counsel acted unreasonably by withholding evidence and argument until the dispositional phase of the hearing. Counsel elicited testimony from Respondent-mother regarding her efforts to "better [her]self as a person and as a mother" by seeking out services while in prison, her plan to live with her parents following her release, and her desire to re-establish her relationship with M.Z.M. and T.Q.N.C. and "be the mother that [she] need[s] to be."
Counsel presented a thoughtful and reasoned argument in opposition to terminating Respondent-mother's parental rights during disposition. Describing Respondent-mother as on the cusp of a "profound change," counsel reviewed in detail each of the educational, substance abuse, and mental health services Respondent-mother had obtained during her most current incarceration. Counsel asked the court to allow M.Z.M. and T.Q.N.C. an "opportunity get to know that mother that they don't have today." To deny these children their "mother figure," he asserted, would deny them the "foundation" of knowing "who they came *130 from," how they came to live in foster care, and why "that's the best place for them" at this time.
Counsel recognized Respondent-mother was not prepared to take custody of her sons, but argued their best interests would be served by allowing them to develop a relationship with their mother, while "living in a safe stable positive foster family." At the conclusion of counsel's argument, the trial court commended counsel for an "excellent job" in representing Respondent-mother.
Respondent-mother allows that counsel's argument may have been "creative." She asserts the evidence presented by counsel had no relevance to the dispositional phase of a termination hearing. We disagree. "After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a). The court enjoys broad discretion in assessing a child's interests, see In re L.M.T. , 367 N.C. 165, 171, 752 S.E.2d 453, 457 (2013), and "may consider any evidence ... that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile." N.C. Gen. Stat. § 7B-1110(a). Moreover, the statutory criteria to be considered by the court include "[a]ny relevant consideration." N.C. Gen. Stat. § 7B-1110(a)(6).
The potential value to M.Z.M. and T.Q.N.C. of maintaining a relationship with *29 Respondent-mother, as well as Respondent-mother's efforts and desire to remain a part of her children's lives, were thus plainly "relevant" to the court's dispositional determination under N.C. Gen. Stat. § 7B-1110(a). Although grounds may be found to exist at adjudication to support termination of parental rights, the trial court is not compelled to do so at disposition, if the "best interests" of the children would be served by continuing reunification efforts. N.C. Gen. Stat. § 7B-1110(b) (2015). The record shows the trial court thoughtfully weighed all factors in its order.
V. Conclusion
Respondent-mother's IAC claim is without merit and is overruled. The trial court's order is affirmed. It is so ordered.
AFFIRMED.
Judges BRYANT and McCULLOUGH concur.