An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-678

Filed 6 May 2026

Sampson County, No. 24JA000099-810

IN RE: A.B.H.,
        A Juvenile.


Appeal by Respondent-Mother from orders entered 24 April 2025 by Judge Mario M. White in Sampson County District Court. Heard in the Court of Appeals 22 April 2026.

> *Mary McCullers Reece and Warrick and Bradshaw, P.A., by Frank L. Bradshaw, for petitioner-appellee Sampson County Department of Social Services.*
>
> *Administrative Office of the Courts, by NC GAL Appellate Counsel Matthew D. Wunsche, for appellee guardian ad litem.*
>
> *Lisa Noda for respondent-appellant mother.*


ZACHARY, Judge.

Respondent-Mother appeals from the trial court's adjudication order and disposition order awarding custody of her minor child, Alan,[1] to Respondent-Father.

---

[1] We employ the pseudonym to which the parties stipulated in order to protect the identity of the juvenile. *See* N.C.R. App. P. 42(b).

On appeal, Respondent-Mother argues that she received ineffective assistance of counsel. After careful review, we affirm.

## I.      Background

On 2 July 2024, the Sampson County Department of Social Services ("DSS") received a report that Alan was neglected, "referencing substance abuse [and] improper care." Respondent-Father filed a custody action against Respondent-Mother in Harnett County. The trial court entered a temporary custody order on 5 July 2024 in which it awarded primary physical custody of Alan to Respondent-Mother and awarded Respondent-Father visitation with Alan every other weekend. Respondent-Mother "failed to send [Alan] to the [first] visitation over the weekend of July 6, 2024." On 8 July, DSS received "a second report for neglect referencing improper supervision" of Alan.

On 22 July 2024, DSS filed a juvenile petition, alleging that Alan was a neglected juvenile. The petition alleged that Respondent-Mother gave a DSS child protective services agent conflicting accounts of Alan's whereabouts during Respondent-Father's first scheduled weekend visitation. The petition also alleged that Respondent-Parents had a volatile relationship, as evidenced by the "multiple domestic violence protective orders" that had been filed beginning in March 2023 and the "multiple violations of these domestic violence protective orders." Respondent-Mother, while "extremely emotional and at times irate," told a DSS case worker that "she believes Respondent[-]Father could kill [Alan] if [Alan] is allowed to go with him

and DSS is going to allow [Alan] to die." Respondent-Father reported that "he believes Respondent[-]Mother is using drugs and believes her mental health is a safety risk to [Alan]." He also stated that Respondent-Mother did "things to provoke him or make it appear that [he was] violating the domestic protection order[s] such as showing up to places [he was] at and parking beside him."

In an order signed on 24 July 2024, the court granted nonsecure custody of Alan to DSS, which placed him in the care of a relative.[2] Although Respondent-Mother was represented by counsel, she filed various motions pro se. In an order entered on 31 March 2025, the trial court dismissed these motions without prejudice and set the matter for hearing on 8 April 2025 at 9:30 a.m.

Following the scheduled hearing, the court adjudicated Alan to be a neglected juvenile in an order entered on 24 April 2025.

In its disposition order entered on the same day, the trial court found that Respondent-Father had entered into a service agreement with DSS and had complied with all provisions.

As to Respondent-Mother, the court found that

> [her] actions continue to be suspicious and illustrative of her failure to adequately address the issues that brought [Alan] into care[,] including the various motions she filed on her own behalf despite being represented by legal counsel, her avoidance and outright refusal to submit to a hair follicle drug test[ ], the fact she acquired a private hair

---

[2] We note that this order has two file stamps, one dated 29 July 2024 and one dated 2 August 2024. Due to our uncertainty as to the file date, we use the date on which the order was signed.

follicle test that did not include the drug [of] which she was accused of using, the fact she has failed to inform anyone of her address or even the town in which she resides, as well [as] her demeanor to [DSS] and during visitation with [Alan].

In its disposition order, the trial court granted custody of Alan to Respondent-Father and suspended Respondent-Mother's visitation "pending further orders."

Respondent-Mother timely filed notice of appeal from the adjudication and disposition orders.

## II.   Discussion

Respondent-Mother asserts that, regarding the adjudication and disposition hearing, she "received ineffective assistance of counsel, which resulted in [her] being denied a fundamentally fair hearing."

### A.  Standard of Review

"A party alleging ineffective assistance of counsel must show that counsel's performance was deficient and the deficiency was so serious as to deprive the party of a fair hearing." *In re L.N.H.*, 382 N.C. 536, 541, 879 S.E.2d 138, 143 (2022) (cleaned up). "In order to show deprivation of a fair hearing, the party must prove that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Id.* (cleaned up). "There is a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. Counsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for a party to

bear." *In re N.R.R.N.*, 297 N.C. App. 673, 689–90, 911 S.E.2d 510, 521 (2025) (citation omitted).

**B. Analysis**

Respondent-Mother first contends that counsel was ineffective by failing to preserve for appellate review the court's denial of the motion to continue the 8 April 2025 hearing.

Our General Statutes govern the granting of continuances in juvenile matters:

> The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.

N.C. Gen. Stat. § 7B-803 (2025).

Here, the matter came on for a preadjudication hearing on 11 March 2025 and a hearing on 8 April 2025. At the preadjudication hearing, Respondent-Mother was present when the hearing began. It is unclear whether she was present when her attorney "ask[ed] for a new date" for the adjudication hearing. The following exchange occurred:

> [RESPONDENT-MOTHER'S COUNSEL]: Your honor, I talked this over with [Respondent-Mother]. We'd already deposited discovery . . . before. There needs to be updated discovery. The reason why I bring that up is if we've

already compiled it, it's easier for us to get it to him in a quick fashion, so I believe by the end of next week, that can be accomplished with updated discovery. That being said, madam clerk, may I approach? If you'll give me one moment to discuss dates.

[DSS COUNSEL]: Your honor, I believe there's a consensus that Tuesday, April 8, would be a good day to set it for adjudication. [Respondent-Father's Counsel] also indicated he would like any kind of updated discovery. By the end of next week, we'll get it to all parties. All right. Tuesday, April 8 for adjudication.

THE COURT: Tuesday, April 8.

[RESPONDENT-MOTHER'S COUNSEL]: Thank you, Judge. And I'll get that order.

The hearing occurred on 8 April, as scheduled and stated in the court's preadjudication order, and Respondent-Mother was not present. No reason was given for Respondent-Mother's absence. In chambers, Respondent-Mother's counsel requested a continuance due to Respondent-Mother's absence, which the court denied. In its disposition order, the trial court granted custody to Respondent-Father and suspended Respondent-Mother's visitation with Alan "pending further orders."

Respondent-Mother fails to demonstrate that counsel's motion to continue enjoyed a greater likelihood of success if made in open court or that the trial court's denial of the motion was an abuse of discretion. Respondent-Mother emphasizes that she "had never missed a court date and actively participated in the proceedings. It was clear from the record that she wanted to participate in the adjudication and disposition hearing[ ]." She neglects, however, to offer any cause for her absence or to

show that there was an extraordinary circumstance warranting a continuance. *See In re L.M.*, ___ N.C. App. ___, ___, 924 S.E.2d 545, 548 (2025) ("[T]he trial court would grant the continuance only in an extraordinary circumstance.").

Additionally, Respondent-Mother does not contend that she did not have notice of the date and time of the hearing to which the parties agreed at the 11 March 2025 preadjudication hearing. "Thus, we see no possibility that [Respondent-Mother] was unfairly surprised or that her ability to contest the petition . . . was prejudiced." *In re C.M.P.*, 254 N.C. App. 647, 653, 803 S.E.2d 853, 858 (2017) (cleaned up). "Further, the record does not disclose any attempt by [Respondent-Mother] to contact the court or her counsel to inform them of any issue preventing her attendance at the hearing, and she has not provided any reason for her absence." *Id.* Accordingly, this argument lacks merit.

Respondent-Mother further maintains that she received ineffective assistance of counsel due to counsel's failure to make a closing argument, to address the concerns she raised in her pro se motions, and to argue the sufficiency of the evidence of her domestic violence against Respondent-Father.

"It is well established that attorneys have a responsibility to advocate on behalf of their clients." *In re N.N.*, 296 N.C. App. 159, 169, 907 S.E.2d 430, 439 (2024) (citation omitted). "However, counsel's failure to advocate for a respondent-parent is not necessarily an indication of ineffective assistance of counsel." *Id.* at 169–70, 907 S.E.2d at 439 (cleaned up). "In some cases, such a choice by counsel may be the result

of strategy or because resourceful preparation revealed nothing positive to be said for the respondent-parent in a particular hearing." *Id.* at 170, 907 S.E.2d at 439 (cleaned up). Moreover, "[t]he reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *In re M.Z.M.*, 251 N.C. App. 120, 127, 796 S.E.2d 22, 27 (2016) (cleaned up).

In the present case, the transcript and record reveals that counsel, in Respondent-Mother's absence, requested a continuance because of her absence, cross examined witnesses during the adjudication and disposition hearing, and elicited testimony favorable to Respondent-Mother. Significantly, counsel extracted testimony that DSS had not substantiated Respondent-Parents' accusations against one another and that Respondent-Parents had submitted to drug testing. Respondent-Mother has not shown that counsel's performance was unreasonable and thus, this argument similarly lacks merit.

Finally, Respondent-Mother argues that she was prejudiced by counsel's ineffective assistance; if the hearing had been continued and if she were present at that hearing, then she could have testified and perhaps changed the ultimate outcome.

Assuming, *arguendo*, that Respondent-Mother's counsel's performance was deficient, her speculation does not demonstrate prejudice. In order to show prejudice, Respondent-Mother "must prove that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *L.N.H.*,

382 N.C. at 541, 879 S.E.2d at 143 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re B.B.*, 381 N.C. 343, 359, 873 S.E.2d 589, 600 (2022) (citation omitted).

Here, there was ample evidence to support the trial court's adjudication and disposition orders and no reasonable probability of a different outcome. In its adjudication order, the trial court made the following findings:

> 20. That . . . Respondent[-]Mother has . . . acted out with violence and harassed . . . Respondent[-]Father including hit him with her vehicle, [waved] a gun towards a video camera on his property making threats, and continued to abuse methamphetamine.
>
> 21. That . . . Respondent[-]Mother's actions and demeanor gave concerns about her continued drug abuse.

The court made the following additional findings in its disposition order:

> 19. That . . . Respondent[-]Mother has not completed the recommended psychological evaluation and refuses to make an appointment. DSS has provided [Respondent-Mother] the names of several providers to complete the evaluation. The [c]ourt also previously ordered . . . Respondent[-]Mother to complete a psychological evaluation but she has still failed to do so.
>
> 20. That . . . Respondent[-]Mother has not completed hair follicle testing despite it being recommended by [DSS] and previously ordered by this [c]ourt.
>
> 21. That a hair follicle test was scheduled for January 31, 2025, for . . . Respondent[-]Mother and she was a no-show, no-call and has refused to participate in future testing.
>
> 22. That . . . Respondent[-]Mother did complete a hair follicle drug screen on her own but the screening

- 9 -

conspicuously failed to include testing for methamphetamine, which is the drug she is alleged to be abusing.

23. That . . . Respondent[-]Mother has completed random urine drug screens and tests positive for amphetamines but has failed to provide a prescription to explain the positive results for amphetamines.

The court also noted that Respondent-Mother's sister was unwilling to supervise Respondent-Mother's visitation with Alan "due to [Respondent-M]other's behaviors" and that Respondent-Mother displayed a "desire to encourage further conflict between [Respondent-Parents]" as well as "continued actions to place [Alan] in the middle of the conflict." The trial court made the ultimate finding that

> Respondent[-]Mother's actions continue to be suspicious and illustrative of her failure to adequately address the issues that brought [Alan] into care[,] including the various motions she filed on her own behalf despite being represented by legal counsel, her avoidance and outright refusal to submit to a hair follicle drug test[ ], the fact she acquired a private hair follicle test that did not include the drug [of] which she was accused of using, the fact she has failed to inform anyone of her address or even the town in which she resides, as well [as] her demeanor to [DSS] and during visitation with [Alan].

Given the plethora of evidence presented, Respondent-Mother has failed to show "that but for counsel's performance, there would have been a different result in the proceedings." *N.N.*, 296 N.C. App. at 171, 907 S.E.2d at 440 (cleaned up).

## III.  Conclusion

For the foregoing reasons, we conclude that Respondent-Mother did not receive

ineffective assistance of counsel and we affirm the trial court's adjudication and disposition orders.

AFFIRMED.

Judges GRIFFIN and FREEMAN concur.

Report per Rule 30(e).